IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALLEN WOLFSON,

        Plaintiff,

                                                   Civil Action

v.

                                                   No. 08-3190-GLR

RON NUTT, SCHERYL NUTT,
and KCTU PAX "55,"

        Defendants.

**MEMORANDUM AND ORDER**

*Pro se* Plaintiff brings this diversity action against defendants Ron Nutt, Scheryl Nutt, and KCTU PAX "55" for alleged breaches of a lease agreement, promissory note, and personal guaranty. The matter comes before the Court upon the Motion for Summary Judgment (ECF No. 70) filed by defendants Ron Nutt and Scheryl Nutt. As discussed below, the Court grants the motion in part and denies it in part.

**I.      Facts**

Consistent with the well-established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff Allen Wolfson is the 100% owner of AZ II, LLC from its formation.[1] AZ II, LLC was dissolved in 2003.[2] Defendants Ron Nutt and Scheryl Nutt had an ownership interest in Market

---

[1] Pretrial Order (ECF No. 73), § IV.A.3.

[2] *Id.*

Media Corporation.[3]  Market Media Corporation used the trade name KCTU PAX "55" between January 1, 2002 and August 31, 2002.[4]

On or about January 1, 2002, AZ II, LLC, as landlord, entered into a written ten-year Lease Agreement for a building located at 100 Market Street, Wichita, Kansas, with KCTU PAX "55" as tenant.  The Lease Agreement bears the following signatures:

AZ II, LLC

*Bonnie Jean C. Tippetts*
Bonnie Jean C. Tippetts
Its: *Manager*


KCTU PAX "55"

*Ron Nutt*
Ron Nutt
Its: *President/GM*[5]

Defendants leased the building to house two television stations, with Spanish and English formats respectively.  The Lease Agreement provided that the tenant, KCTU PAX "55," would pay rent of $7,000 a month plus utilities until December 31, 2007, when the rate would increase five percent.  The lease was to commence January 1, 2002, and end December 31, 2012, with no rent to be paid until April 1, 2002.  In lieu of a monthly rental payment from January 1, 2002, to March 31, 2002, KCTU PAX "55" would issue to the AZ II, LLC 30,000 shares of its preferred stock.

---

[3]Nov. 25, 2008 Affidavit of Ron Nutt (ECF No. 38) ¶ 2.

[4]Pretrial Order § IV.A.1.

[5]Ex. A to Affidavit (ECF No. 38) of Ron Nutt.

Sometime before May 2002 Defendants defaulted on the lease, forcing the building to be sold at foreclosure for failure to make mortgage payments.

Plaintiff alleges that as an incentive he also loaned $184,000 to the corporation owned by defendants Ron Nutt and Scheryl Nutt. On or about January 2, 2002, they agreed in writing to make payments of approximately $3,500 a month on the $184,000 loan. Defendants Ron Nutt and Scheryl Nutt used the $184,000 to buy equipment for the television stations, and they kept the equipment. According to Plaintiff, Defendants were to dissolve their corporation, but they failed to publish a notice of its dissolution to put Plaintiff on notice within a reasonable period of time., i.e. within one year of their default on the loan. Plaintiff also alleges that in a letter of understanding dated December 26, 2001, with an addendum dated April 16, 2002, Defendants as borrowers agreed in writing to give AZ II, LLC 200,000 shares of stock, which was never delivered as collateral.

Plaintiff originally filed this action in the District of Utah on October 24, 2005. The case was transferred to this District on August 4, 2008.[6] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

In their instant motion filed on March 22, 2010, Defendants seek summary judgment pursuant to Fed. R. Civ. P. 56 on all of Plaintiff's claims. They contend that the Plaintiff's claims are barred by the Kansas statute of frauds, K.S.A. 33-106, because neither Scheryl nor Ron Nutt personally signed any alleged lease, promissory note, or guaranty. Defendants also argue that they are not the alter ego of Market Media Corporation doing business as KCTU PAX "55," and that they have observed all the corporate formalities, including disclosing that Ron Nutt was acting as its president and general manager.

---

[6]*See* Order transferring case (ECF No. 22).

On May 11, 2010, approximately two months after Defendants filed their Motion for Summary Judgment, Plaintiff filed his response in opposition to the motion for summary judgment, as well as his motion for summary judgment. Defendants thereafter filed a motion to strike Plaintiff's motion for summary judgment. Plaintiff did not file any response in opposition to the motion to strike.

At the September 30, 2010 telephone status conference, the Court overruled Defendants' motion to strike Plaintiff's motion for summary judgment. It also advised the parties that it would treat Plaintiff's motion for summary judgment as a response in opposition to Defendants' motion for summary judgment.[7] The Court also granted Defendants' oral request to treat the arguments contained in their motion to strike as a reply in support of their motion for summary judgment.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c)(2), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[9] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim,"[10] or it "could have

---

[7]*See* Oct. 4, 2010 Order (ECF No. 83).

[8]Fed. R. Civ. P. 56(c)(2).

[9]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

an effect on the outcome of the lawsuit."[11]  A dispute over a material fact is "genuine" only if a rational jury could find in favor of the nonmoving party on the evidence presented.[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[14]  Under Rule 56(c), the moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.[15]

## III.    Whether Defendants are Entitled to Summary Judgment on Plaintiff's Claims

The parties have stipulated in the Pretrial Order (ECF No. 73) that the law of Kansas applies to all issues in this case.  The Court will therefore apply Kansas law to determine if Defendants are entitled to summary judgment on any or all of the claims for breach of lease agreement, breach of loan agreement, and breach of personal guaranty.

---

[11]*Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quoting *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002)).

[12]*Id.*

[13]*Id.* at 670-71.

[14]*Id.* at 671.

[15]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.     Whether the Kansas statute of frauds bars Plaintiff's claims?

Defendants contend that they are entitled to summary judgment on all the claims, because the alleged lease, promissory note, and personal guaranty are unenforceable under the Kansas statute of frauds, K.S.A. 33-106.  The statute requires certain types of agreements to be in writing and signed by the party to be charged.  The Kansas statute of frauds, K.S.A. 33-106, states in pertinent part, that no action shall be brought:

> whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person; . . . or upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; or upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.

The statute of frauds therefore renders an oral agreement unenforceable, unless there are equitable considerations that remove it from the statute's application.[16]  To remove an oral agreement from the statute of frauds, a party must show reliance upon the agreement to his or her detriment and a gross injustice would result if the oral agreement was not enforced.[17]

Defendants contend that the statute of frauds applies to bar all of Plaintiff's claims.  They argue that the three agreements upon which Plaintiff seeks to recover are unenforceable under the statute of frauds.  Specifically, Defendants state that the Lease Agreement between AZ II, LLC and KCTU PAX "55" was not signed by them in their personal capacity.  With regard to the alleged loan

---

[16]*Bank of Alton v. Tanaka*, 247 Kan. 443, 452, 799 P.2d 1029 (1990).

[17]247 Kan. at 452-53, 799 P.2d 1029.

agreement and personal guaranty, they assert that Plaintiff has not produced any documentation or writing of such an agreement.

Because the statute of frauds is an affirmative defense under Fed. R. Civ. P. 8(c), Defendants bear the burden of establishing it.[18]  Defendants therefore have the burden to show that the statute of frauds applies to the claims for breach of lease, breach of promissory note, and breach of personal guaranty.  After establishing that the statute of frauds applies to each alleged agreement, Defendants then must show that the agreement alleged to be breached fails to satisfy the statute of frauds' requirements.  Defendants can make this showing by pointing out the lack of a writing signed by them, the party to be charged.  In moving for summary judgment, Defendants must demonstrate that no disputed material fact exists regarding their affirmative defense.[19]

### 1.    Lease Agreement

Defendants Ron Nutt and Scheryl Nutt contend the Lease Agreement is unenforceable as to them, because it is not "signed by the party to be charged."[20]  They argue that the Lease Agreement between landlord AZ II, LLC and tenant KCTU PAX "55" is unenforceable against them for lack of their personal signatures.[21]  The Agreement bears no signature of Scheryl Nutt.  Although the Agreement was signed by Ron Nutt, Defendants contend that he signed it only on behalf of KCTU PAX "55" in his capacity as president and general manager, and not in any personal capacity.

---

[18]*Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 59, 643 P.2d 100 (1982) ("When a defendant asserts the statute of frauds as an affirmative defense, the burden of proof is on him.").

[19]*Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

[20]K.S.A. 33-106.

[21]K.S.A. 33-106.

Kansas law provides that a lease agreement not to be performed within the space of one year falls under the ambit of the statute of frauds.[22] Plaintiff here bases his claim for breach of lease upon the written Lease Agreement between AZ II, LLC and KCTU PAX "55." By its terms, the lease was to commence January 1, 2002, and end December 31, 2012. As the agreement could not be performed within one year, the statute of frauds applies to the claim for its breach. Unless an exception applies, in order to satisfy the statute of frauds, the Lease Agreement therefore must be (1) in writing, and (2) signed by the party to be charged.[23] Defendants do not dispute the existence of a written lease agreement. In the memorandum in support of their motion for summary judgment, they offer as an uncontroverted fact that a "[l]ease dated January 1, 2002 wherein AZ II, LLC is landlord and KCTU PAX '55' is tenant was executed."[24] In addition, Defendant Ron Nutt attached a copy of the Lease Agreement to his November 26, 2008 Affidavit (ECF No. 38).

Because the Lease Agreement was memorialized in a signed writing, the pertinent inquiry is whether or not defendants Ron and Scheryl Nutt, or either of them, can be personally liable under the lease by virtue of their alleged use of KCTU PAX "55" as a trade name and whether that usage preceded the incorporation of their company, Market Media Corporation. In his Affidavit filed on May 11, 2010 (ECF No. 76), Plaintiff states that "KCTU PAX '55' was the trade name of Ron Nutt and Scheryl Nutt. The trade name at the time of signing documents was not owned by Market

---

[22]*See Progress Enters., Inc. v. Litwin Corp.,* 225 Kan. 212, 214, 589 P.2d 583, 586 (1979) (lease of real estate exceeding one year in duration required to be in writing under K.S.A. 33-105); *Tang v. Loveland*, 27 Kan. App. 2d 185, 186-87, 1 P.3d 922, 923 (2000) (twelve-month lease agreement was subject to statute of frauds requiring that any contract that cannot be performed within one year from its making be in writing).

[23]K.S.A. 33-106.

[24]Def.'s Mem. in Supp. of Mot. for Summ. J. (ECF No. 71, p. 2.), Stip. No. 6.

Media Corporation because Market Media was not incorporated until after documents were signed." Plaintiff further states in his Affidavit that "[D]efendants have no proof that the trade name was not in fact themselves." In response, Defendants point to Stipulation No. 1 in the Pretrial Order, whereby Plaintiff agreed that "the trade name KCTU PAX '55' was used by Market Media Corporation between January 1, 2002 and August 31, 2002."[25] That stipulation leaves unanswered, however, three material questions: First, whether either or both defendants used KCTU PAX "55" as a trade name for either of them individually or as a trade name for the corporation, Market Media Corporation. Second, whether Market Media Corporation was incorporated when Ron Nutt signed the Lease Agreement on behalf of KCTU PAX "55" as its President and General Manager. Third, whether Plaintiff knew KCTU PAX "55" was a trade name when the Lease was executed, and if he did, who he reasonably believed to be its user. With these questions undetermined, the Court cannot rule out the possibility that either or both of the defendants Nutt could be liable upon a theory of alter ego for breach of the lease agreement. Defendants' Motion for Summary Judgment on Plaintiff's claim for breach of Lease Agreement is therefore denied.

### 2. Loan agreement

Defendants also contend they are entitled to summary judgment on the claim for breach of a promissory note, because Plaintiff has not produced a written loan agreement with a personal signature by either of them. They deny personally signing any document that is evidence of a loan. They assert that the failure to produce any signed loan agreement, promissory note, or any other writing evidencing a loan entitles them to summary judgment on this claim.

---

[25]Pretrial Order, § IV.A.1.

In the Pretrial Order (ECF No. 73) Plaintiff alleges that he loaned $184,000 to the corporation owned by defendants Ron Nutt and Scheryl Nutt. Specifically he alleges that on or about January 2, 2002, Defendants agreed in writing to make payments of approximately $3,500 a month against the $184,000 loan.

The Kansas statute of frauds,[26] K.S.A. 33-106, provides, in pertinent part, that:

> No action shall be brought whereby to charge a party . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.[27]

Under the terms of the loan agreement alleged by Plaintiff, Defendants were to pay approximately $3,500 a month against the $184,000 loan. By those terms, the Court finds that the alleged loan agreement between Plaintiff and Defendants falls within the statute of frauds as an agreement that cannot be performed within one year. Plaintiff has not submitted anything to suggest that the alleged loan is outside the statute of frauds. The Court therefore finds the alleged loan agreement is subject to the signed writing requirements of the Kansas statute of frauds. Accordingly, Plaintiff must offer a writing signed by Defendants, the parties to be charged, for his loan agreement to be enforceable under K.S.A. 33-106.

The Court finds no evidence in the record of any written agreement for a $184,000 loan to Defendants, as Plaintiff alleges. Plaintiff has produced no loan agreement, promissory note, or other writing, signed by Defendants, as evidence of the purported loan. Nor has he provided any

---

[26]The Court finds that signed writing requirements of the Kansas Commercial Statute of Frauds, K.S.A. 16-118(a), do not apply in this case because Plaintiff is not a financial institution and is therefore not a "creditor," as defined by K.S.A. 16-117(b).

[27]K.S.A. 33-106.

memorandum or note from Defendants memorializing or even referring to a loan agreement. Plaintiff does state in the Pretrial Order that "[i]n a letter of understanding dated December 26, 2001, with an addendum dated April 16, 2002, [D]efendants as borrowers agreed in writing to give AZ II, LLC 200,000 shares of stock, which was never delivered as collateral."[28] This contention by itself, without some evidentiary support, does not suffice to defeat summary judgment. Defendants have sufficiently established their defense, based upon the statute of frauds, that Plaintiff has produced no signed document by which to charge them with liability upon the alleged loan. In order to defeat summary judgment, Plaintiff must offer some evidence of the existence of these writings. Plaintiff, as the nonmoving party, "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial."[29] Defendants are entitled to summary judgment against the claim for breach of loan agreement.

### 3. Personal guaranty

Defendants also contend they are entitled to summary judgment upon the claim for breach of guaranty, because Plaintiff has produced no such guaranty with a personal signature by either of them. They deny personally signing a personal guaranty. They argue that the failure by Plaintiff to produce any such document entitles them to summary judgment.

Personal guaranties are "promises to answer for the debt, default or miscarriage of another," and as such, are subject to the statute of frauds.[30] Therefore, in order to be enforceable, a personal

---

[28]Pretrial Order § V.A.

[29]Fed. R. Civ. P. 56(e)(2).

[30]*Botkin v. Security State Bank*, 281 Kan. 243, 248, 130 P.3d 92, 96 (2006) (citing *Walton*
(continued...)

guaranty "must be in writing and signed by the party to be charged therewith."[31]

Plaintiff has failed to produce any documentation of a personal guaranty signed by Defendants.  He has not come forward with any writing even referencing the alleged guaranty.  The Court otherwise finds no evidence of any written guaranty to support the claim.  Because the alleged promise by Defendants to personally guarantee the debt of another falls within the statute of frauds and Plaintiff has shown no basis to take the alleged guaranty outside the statute, any such promise must be in writing and signed by Defendants for it to be enforceable.  Plaintiff has failed to come forward with any evidence of the existence of a written personal guaranty signed by Defendants.  The breach of personal guaranty claim against them is therefore barred under the statute of frauds.  Defendants are entitled to summary judgment in their favor against Plaintiff's claims for breach of personal guaranty.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment (ECF No. 70) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED THAT** a Telephone Status Conference is scheduled for **November 16, 2010 at 2:15 p.m.**  The Court will initiate the conference call.

Dated in Kansas City, Kansas on this 3rd day of November, 2010.

S/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge

---

[30](...continued)
*v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970)).

[31]K.S.A. 33-106.